IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

THE PREMCOR REFINING GROUP,   :
                                                           :     C.A. 10-444-RGA

    Plaintiff,

v.

NATIONAL FIRE INSURANCE
COMPANY OF HARTFORD,

    Defendant.

**<u>MEMORANDUM OPINION</u>**

---

Johnna Darby, Esq., Wilmington, Delaware and Sandford Schmidt, Esq. (argued), Medford, New Jersey, Attorneys for Plaintiff The Premcor Refining Group.

Richard Abrams, Esq. (argued), Wilmington, Delaware and Timothy H. Rohs, Esq., Wilmington, Delaware, Attorneys for Defendant National Fire Insurance Company of Hartford.

---

April 10, 2012

Wilmington, Delaware

1

*Richard G. Andrews* [signature]

ANDREWS, UNITED STATES DISTRICT JUDGE:

Plaintiff Premcor Refining Group seeks a declaratory judgment that Defendant National Fire Insurance Company of Hartford is obligated to provide a defense and indemnification. Premcor moves for summary judgment. (D.I. 23, p. 1).

Premcor is the defendant in the underlying personal injury action brought by Edward O'Hara. (D.I. 25, Exh. A at 1-4). O'Hara alleged he was injured in a fall down a manhole at Premcor's Delaware City Refinery while working for his employer, Griffith Roofing and Waterproofing. (D.I. 25, Exh. A at 2). O'Hara alleged that his injuries were caused by the sole negligence of Premcor. *Id.* The work agreement between Griffith and Premcor required Griffith to purchase general liability insurance that covered Premcor equally as an "additional insured." (D.I. 25, Exh. B at 1-2). Griffith did purchase insurance, but Premcor was not equally insured; the policy excluded liability resulting from Premcor's "sole negligence." (D.I. 25, Exh. W at 1). The insurance agent, however, presented Premcor with a "certificate of insurance" on behalf of National Fire that indicated broader coverage than that actually purchased by Griffith. (D.I. 25, Exh. C at 13). The certificate described coverage "on a primary and non-contributory basis, and with no exclusion for punitive damages." *Id.* The certificate did not indicate that Premcor would not be covered for liability resulting from its "sole negligence." *See id.* The certificate also contained a disclaimer that stated it was issued as a matter of information only and had no effect on the underlying policy. *Id.*

Premcor relies on two theories in support of its claim for insurance coverage. First, Premcor argues that the certificate of insurance modifies the terms of the underlying insurance contract to cover liability resulting from Premcor's sole negligence. In the alternative, Premcor argues that even if the terms of the underlying policy control, the Court should look past the allegations in the O'Hara complaint to determine whether it is covered as an "additional insured." Premcor argues that the factual record

2

developed through discovery indisputably shows that Griffith and O'Hara were at least partly negligent in causing O'Hara's injuries and therefore liability did not result from Premcor's sole negligence.

Summary judgment is appropriate, "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material fact" is one that "could affect the outcome" of the proceeding. *See Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011). The moving party bears the burden of proving that no genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 568 n. 10 (1986). The district court, when determining whether a genuine issue of material fact exists, must view the evidence in the light most favorable to the nonmoving party and draw inferences in that party's favor. *See Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). If the moving party is able to demonstrate an absence of disputed material facts, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

However, the mere existence of some evidence in support of the nonmoving party will not prove sufficient for denial of a summary judgment motion. *See id*. Rather, the nonmoving party must present enough evidence to enable a jury to reasonably find for it on that issue. *Id*. Specifically, the party opposing summary judgment "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). If the nonmoving party fails to make a sufficient showing on an essential element of its case for which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp.*, 477 U.S. at 322.

Premcor argues that the certificate of insurance received from National Fire's insurance agent modified its coverage as the "additional insured" to provide general liability insurance. The certificate of insurance had typewritten language indicating that Premcor was covered on a primary and non-contributory basis, with a waiver of subrogation, and with no exclusion for punitive damages. (D.I. 25,

3

Exh. C at 13). Such coverage would require National Fire to tender a defense for the O'Hara negligence claim and to indemnify Premcor for any resulting judgment. National Fire argues that the disclaimer printed in the upper-right hand corner of the certificate of insurance defeats Premcor's theory:

> THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHT UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND, OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.

*Id.* National Fire argues that this language proves that the certificate of insurance was issued for information only and cannot be relied upon by Premcor as the basis for theories of contract modification or estoppel. Premcor counters that the typewritten language describing the coverage supersedes the boilerplate disclaimer. Both parties agree that there is no Delaware law on the interplay between a disclaimer and later typewritten additions on a certificate of insurance. (*See* D.I. 24, p. 15; D.I. 30, p. 7).

The Court, however, can avoid predicting how Delaware state courts would rule on this issue by confronting the necessary predicate to a modification of coverage. For Premcor's contractual theories to prevail, Premcor must prove that the individual that delivered the certificate of insurance had either actual authority to change the terms of the underlying policy or apparent authority to bind National Fire to the stated terms. *See Giangrant v. Richard A. Parsons Agency, Inc.*, 1988 WL 22325, *2 (Del. Super. 1988). Denis Barba of Insurance Associates testified to supplying Premcor with the certificate of insurance. (D.I. 30, Exh. E at 21-22). Barba had an agency agreement with National Fire governed by Illinois law. (D.I.30, Exh. F at 6). Illinois law asks whether an insurance agent has the authority to conduct the specific act at issue. *See Zannini v. Reliance Ins. Co. of Illinois, Inc.*, 590 N.E.2d 457, 463 (Ill. 1992). Barba testified to having authority to issue certificates of insurance, but specifically denied having authority to issue certificates inconsistent with the underlying policy. (D.I. 30, Exh. E at 58). Further, the agency agreement empowered Barba to "bind, execute and issue the kinds of insurance contracts to which this agreement applies, but only as specifically authorized from time to time by us in writing." (D.I.30, Exh. F at 1). Barba did not have any authority to modify insurance contracts or issue certificates inconsistent

4

with the underlying insurance policy. *See id.* at 1-11. Premcor offered no evidence to the contrary. It is thus undisputed that Barba lacked actual authority to modify the insurance policy.

Premcor argues that Barba had apparent authority to modify the insurance contract. Apparent authority requires reasonable reliance by the party claiming the existence of authority upon the indicia of authority originating with the principal. *See Billops v. Magness Const. Co.*, 391 A.2d 196, 198 (Del. 1978). In other words, an agent cannot create his own apparent authority; it can only be premised on a representation by the principal. *See id.* Premcor offers evidence that Barba spoke with National Fire, with National Fire explicitly confirming the terms of the certificate. (D.I. 31, p. 4). These statements, however, were not communicated to Premcor. Premcor cannot argue that it relied upon statements it never received. Premcor's argument for apparent authority must fail. *See Billops*, 391 A.2d at 198. Because Barba lacked both apparent and actual authority to change the terms of the underlying insurance policy, his delivery of the certificate of insurance cannot affect Premcor's coverage as an "additional insured."

The issue remains as to whether Premcor is covered under the terms of the policy as an "additional insured." The "additional insured" endorsement states the following:

> B.  The insurance provided to the additional insured is limited as follows:
>
>   1.  That person or organization is an additional insured solely for liability due to your negligence specifically resulting from "your work" for the additional insured which is the subject of the written contract or written agreement. No coverage applies to liability resulting from the sole negligence of the additional insured.

(D.I. 25, Exh. W at 1). National Fire argues that coverage does not extend to Premcor, as the O'Hara complaint specifically alleged injuries caused by the sole negligence of Premcor.[1] There is nothing in the O'Hara complaint that remotely hints of negligence by anyone other than Premcor. Thus, the complaint falls within the exception for "[n]o coverage applies to liability resulting from the sole negligence of the additional insured." (D.I. 25, Exh. W at 1).

---

[1] "On or about Friday, July 20, 2007 at or about 9:00 a.m., Mr. O'Hara was a lawful patron and/or business invitee when suddenly and without warning he was caused to fall as a result of an insecure manhole cover due solely to the negligence of defendant acting by and through its authorized agents, servants, workmen and/or employees acting within the course and scope of their employment causing injuries and damages to Mr. O'Hara..." (D.I. 25, Exh A at 2).

5

Premcor argues that the Court should look past the four corners of the complaint to the factual record developed through discovery. This is based on a theory that the factual record shows that Griffith, or O'Hara, or both were at least partly negligent in causing O'Hara's injuries. Therefore, liability did not result from Premcor's sole negligence.

Premcor relies upon *Pike Creek Chiropractic Center, P.A. v. Robinson*. 637 A.2d 418 (Del. 1994). In *Pike Creek Chiropractic Center*, an employee promised to indemnify his employer against liability resulting from the employee's acts or omissions. *Id.* at 419. However, when both the employer and employee were sued for negligence, the employee's insurance company refused to tender the employer's defense. *Id.* The insurance company refused because the initial complaint alleged that the employer's acts were partly responsible for the claimant's injuries, and the insurer viewed the indemnification agreement as not applying when the employer's actions were partly to blame. *See id.* at 420. After discovery in the underlying case, the plaintiff stipulated that her only claim against the employer was not based on the employer's actions, but on the theory of vicarious liability. *Id.* At that point, the insurance company agreed to tender defense, but argued that it was not liable for costs incurred by the employer prior to the plaintiff's stipulation, because the complaint did not allege facts consistent with tendering a defense. *Id.* The Delaware Supreme Court disagreed:

> The indemnitee's actual wrongdoing or lack thereof, not a third-party plaintiff's allegations, should be determinative. Where the indemnitee is free from actual wrongdoing, it should not be divested of its legal right to indemnification due to the unsubstantiated pleading choices of a third party...[The plaintiff] would be arbitrarily denied the benefits of its bargain with [the employee] were [the third party's] meritless allegations sufficient to void its contractual right to indemnification. A court construing an indemnification agreement should look to the actual facts developed through discovery, or at trial, to determine if the indemnitee is free from actual wrongdoing and therefore entitled to complete indemnification.

*Id.* at 421. Thus, the court looked beyond the initial complaint and required the insurer to pay for the employer's defense costs incurred prior to the stipulation.

The Delaware Supreme Court later found it proper to look beyond the complaint to determine a duty to defend claim in *American Ins. Group v. Risk Enterprise Management, Ltd.*,

6

761 A.2d 826, 829 (Del. 2000). The Supreme Court first noted that a court "typically looks to the allegations of the complaint to decide whether the third party's action against the insured states a claim covered by the policy, thereby triggering the duty to defend. The rationale underlying this principle is that the determination of whether a party has a duty to defend should be made at the outset of the case, both to provide the insured with a defense at the beginning of the litigation and to permit the insurer, as the defraying entity, to control the defense strategy." *Id.* The Supreme Court then noted that the facts of that case presented an "unusual situation" where discovery was complete and the underlying case had settled before the demand for defense was made. *Id.* The policy preference to make an early determination of the duty to defend was thus absent. *Id.* The Supreme Court then remanded the case to the trial court to determine whether the evidence of the underlying case warranted finding a duty to defend and indemnify. *See id.* at 829-30.

*Pike Creek Chiropractic Center* seemingly encouraged trial courts to look beyond the complaint to actual facts developed through discovery in determining indemnification issues.[2] In *American Insurance Group*, the Delaware Supreme Court wanted trial courts to review "the complete discovery record" in deciding indemnification and duty to defend issues. The Delaware Supreme Court, however, also made clear that it viewed the general rule as being that the complaint was the only relevant description of the underlying events in construing an insurer's duty to defend.[3]

---

[2] "A court construing an indemnification agreement should look to the actual facts developed through discovery, or at trial, to determine if the indemnitee is free from actual wrongdoing and therefore entitled to complete indemnification."*Pike Creek Chiropractic Center*, 637 A.2d at 421.

[3] It makes sense that unless the underlying case is resolved, the duty to defend and indemnify should be decided on the underlying Complaint's allegations. Relying upon discovery while it is in midstream is problematic. First, it is a moving target. Additional discovery may alter the balance of the evidence. It may create disputed facts. Second, it is generally at tension with the way insurance coverage cases are decided, which is usually on a motion for summary judgment. Fact finding is not part of the process. In *Pike Creek Chiropractic Center*, the Court held that the duty to indemnify existed from the beginning of the case, but the court did not explain when and how the trial court should have decided that. By the time the trial court ruled in *Pike Creek*, as a result of the equivalent of an amended complaint, it was clear that the party seeking indemnification had no liability. In *American Insurance Group*, the decision about the duty to indemnify and defend was after the underlying case settled.

7

National Fire cites *Premcor Refining Group, Inc. v. Matrix Service Industries*, 2009 WL 960567, *6 (Del. Super. 2009), contending that the Court should not look outside the pleadings. The parties stood in a similar relationship as they do in the instant case; Premcor was sued by a third party and demanded a defense and indemnity as an additional insured under a policy that restricted coverage to liability arising out of the work of the primary insured. *Id.* at *4. The insurer claimed that the underlying complaint foreclosed recovery arising from the work of the primary insured and therefore did not trigger coverage for the additional insured. *Id.* Premcor argued that the court should look outside the four corners of the complaint and cited *Pike Creek* and *American Ins. Group* in support. *Id.* at *6. The court distinguished those two cases and declined to look beyond the complaint, stating that they applied to situations where a complete discovery record had been developed and the underlying litigation was resolved. *Id. American Ins. Group* was further distinguished as involving a case where the defendant did not tender a timely defense request. *Id.* The court limited the duty to defend analysis to the underlying complaint. *Id.*

Taking guidance from *American Insurance Group* and *Matrix Services Industries*, the Court will not look beyond the underlying complaint to determine National Fire's duty to defend. Although discovery was mostly complete at the time Premcor filed for summary judgment, the underlying O'Hara case is still pending.[4] (D.I. 8, p. 1-2; D.I. 38, p. 62). Absent completion of discovery and resolution of the underlying case, Delaware law is inclined against looking beyond the pleadings to determine whether a duty to defend exists. Further, this result honors the policy rationale delineated in *American Insurance Group*. If National Fire were forced to assume the defense of Premcor at this stage in the litigation, its options would be limited by the litigation strategy chosen by prior counsel, one of the hazards *American Insurance Group* sought to prevent. 761 A.2d at 829. Thus, National Fire only has a duty to defend Premcor if the allegations of the O'Hara complaint trigger the policy language. The policy only covers liability for injuries at least partly caused by someone other than Premcor. (D.I. 25, Exh. W at 1-2). The

---

[4] *O'Hara v. Premcor Refining Group, Inc.,* No. 09-500-RGA (D. Del). *See* D.I. 108 (discovery due by February 29, 2012); 109 (deposition notice); 110 (documents and inspection); 111 (deposition notice); 118; 120 (requesting more time for liability expert depositions).

8

O'Hara complaint explicitly alleges injuries solely caused by Premcor. (D.I. 25, Exh. A at 2). Thus, the allegations do not trigger National Fire's duty to defend. Finally, because the duty to indemnify is narrower than the duty to defend, National Fire has no duty to indemnify Premcor at this time. *ConAgra Foods, Inc. v. Lexington Insurance Co.*, 21 A.3d 62, 73-74. (Del. 2011); *Capano Management v. Transcontinental Ins. Co.*, 78 F. Supp. 2d 320, 324 n.1 (D. Del. 1999).

Premcor maintains that the Court's holding renders the contract illusory. Insurance contracts are to be interpreted in a way that does not render any provision illusory or meaningless. *O'Brian v. Progressive Northern Ins. Co.*, 785 A.2d 281, 287 (Del. 2001). Premcor argues that because workers compensation laws preclude O'Hara from ever alleging negligence against Griffith, the "sole negligence" exception will always apply to Premcor as the additional insured and therefore the insurance is illusory. Premcor is incorrect, however, because the fact that coverage is not triggered by the particular circumstances of this case does not mean there are no set of facts where coverage would apply. *See Great Northern Ins. Co. v. Greenwich Ins. Co.*, 2008 WL 2048354, *4 (W.D. Pa. 2008). For example, if a non-employee of either Griffith or Premcor was injured walking through the site and brought suit against both companies, the additional insured provision would be triggered. Thus, the contractual provision is not illusory.

Premcor's motion for summary judgment is DENIED.